UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 DEC 17 PM 2: 29

CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| MARIANNE SOUZA and BRUCE SOUZA, on behalf of minor son, T.S., <br><br> Plaintiffs, <br><br> v. <br><br> BENNINGTON RUTLAND SUPERVISORY UNION BOARD et al., <br><br> Defendants. | Case No. 5:15-cv-00187-gwc |

**OPINION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS**
(Doc. 15)

Defendants have filed a Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Doc. 15.) They allege that, under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1490, Plaintiffs' failure to exhaust administrative remedies bars the federal claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and Title V of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. In the absence of viable federal claims, Defendants seek the dismissal without prejudice of the state-law claims for negligence and violation of state educational provisions. A hearing on the pending Motion was held on December 2, 2015.

## Background

The facts alleged in the Complaint and supplemented by documents filed by both parties are as follows:

Plaintiffs are the parents of T.S. who is currently a seventh grader. During the 2013–2014 school year, T.S. was a fifth grader at Flood Brook School ("School") in Londonderry, Vermont. During that school year, he was on an Individual Education Plan (IEP) due to some problems in learning.

Defendants are administrators and the governing educational boards with responsibility for supervision of the School.

During his fifth grade year in 2013–2014, T.S. fell ill with Lyme disease and missed many days of school. Some of his classmates teased him about his absences as well as his need for IEP services.

When T.S. returned to school in the sixth grade, he was able to attend full-time, but the teasing and name-calling persisted. In November 2014, Plaintiffs complained to the assistant principal of the School about their son's ongoing harassment. After a face-to-face meeting, the assistant principal issued a written decision in which she stated that T.S. had not been subjected to bullying or harassment. Instead, she determined that T.S. was at fault and issued him a one-day suspension for making a false accusation. She also required T.S. to receive additional instruction about harassment.

Plaintiffs took no appeal and requested no other review of the November 2014 decision. In January 2015, matters took a turn for the worse when a classmate added nail polish remover containing acetone to a milk container set before T.S. T.S. drank the milk and felt sick. This experience made him extremely anxious about returning to school and he missed additional days. In the wake of this incident, Plaintiffs requested that Defendants permit T.S. to attend an alternative program in a different school. They also sought tutoring. These requests were presented as accommodation requests arising from T.S.'s anxiety and post-traumatic stress disorder which in turn were caused by the harassment from his peers.

Over the course of the spring, Plaintiffs and certain Defendants discussed a possible 504 plan pursuant to the Rehabilitation Act which would have placed T.S. in a different school. These talks did not result in an agreement. Instead, Plaintiffs withdrew T.S. from the School. They have paid tuition at an alternative school during the current school year which is T.S.'s seventh grade year. He seeks to attend this school during his eighth grade as well. The arrival of school choice in the ninth grade will eliminate any further dispute over where he can attend school at public expense.

Plaintiffs have filed suit alleging violations of the ADA (Counts I and IV), § 504 of the Rehabilitation Act (Count II), violations of the Vermont Fair Housing and Public Accommodations Act (VFHPAA) (Counts III and V), and common law negligence (Count VI). At oral argument, the court pressed Plaintiffs' counsel to identify the types of claims presented and the nature of the damages sought. Counsel identified three principal claims:

A. Failure to protect T.S. from additional harm despite notice that he was being bullied. This claim arises under both the ADA as a failure to accommodate T.S.'s illness and subsequent anxiety and as a state-law negligence claim. The damages sought are consequential money damages for emotional distress.

B. Failure to accommodate T.S.'s disability of anxiety during the 2014–2015 school year by authorizing additional care and support such as tutoring at home. The damages sought are primarily reimbursement of educational expenses borne by the parents.

C. Failure to provide an appropriate education at a new school as a result of the harassment inflicted on T.S. during the 2014–2015 school year. The damages sought are reimbursement of tuition at the new school which T.S. attends and related expenses.

In addition, Plaintiffs assert claims of retaliation against T.S. because of his assertion of claims under the ADA and the Rehabilitation Act.

## Analysis

Defendants argue that Plaintiffs failed to exhaust their administrative remedies by requesting a "due process" hearing under 20 U.S.C. § 1415(f) regarding their claim that their son was not receiving an appropriate education.[1] Since exhaustion is a requirement for education-based claims, Defendants seek dismissal of the Complaint without prejudice.

Plaintiffs argue that the Motion is premature since exhaustion is an affirmative defense which must be raised in an answer and not in a motion to dismiss on jurisdictional grounds. They also argue that any administrative remedy would be futile because the hearing officer has no authority to award consequential damages of the type they seek. They also argue more

---

[1] Section 1415(f) contemplates an impartial "due process hearing" conducted by a state or local educational agency. *Id.* § 1415(f)(1)(A). Vermont law provides for such due process hearings. *See* 16 V.S.A. § 2957 (special education due process hearings); State of Vermont Special Education Rules 129, 193 (2013), http://education.vermont.gov/documents/educ_sped_guide.pdf (last visited Dec. 17, 2015) (Rule 2365.1.6 setting forth due process complaint procedures; Rule 1253 providing that § 504 violations "may be resolved through due process hearings in the same manner as for a special education due process hearing"). The court rejects Plaintiffs' suggestion that they satisfied the purpose behind the exhaustion requirement "through on-going communication and administrative processes with the defendants." (Doc. 16 at 7.) The communications and § 504 meeting are not a substitute for the State administrative due process hearing.

broadly that the process of administrative review is wasteful and unnecessary in cases of this nature.

## I. Timeliness of the Motion and the Rule 12(b)(1) Standard

Second Circuit precedent clearly authorizes—indeed expects—the trial courts to consider claims of failure to exhaust remedies under IDEA as jurisdictional in nature. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."). These claims can and must be heard at the earliest possible stage in order to avoid the delay which follows a later determination that plaintiffs failed to exhaust administrative remedies. Any dismissal is without prejudice to plaintiffs' right to refile after making use of the administrative remedy. The court is satisfied that now is the correct time to consider the exhaustion issue.

Accordingly, the court proceeds under Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court 'lacks the statutory or constitutional power to adjudicate it.'" *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "'A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (quoting *Makarova*, 201 F.3d at 113).

## II. Exhaustion of Remedies

Understanding the exhaustion doctrine in a claim that public educators failed to meet the needs of a disabled student requires a brief tour of the applicable statutes. The IDEA creates a right to a free appropriate public education for any disabled child. Through the development of an IEP and other tools, parents and school boards are required to address the individual needs of each student and provide additional resources or alternative educational opportunities. Although the IDEA includes a right to sue in federal court, *Polera*, 288 F.3d at 483, it permits equitable relief only; there is no cause of action for money damages under the IDEA. *Id.* at 486 ("[M]onetary damages are not available under the IDEA.").

The IDEA also requires the parties to submit their dispute to an administrative hearing process before filing suit. 20 U.S.C. § 1415(*l*).[2] Plaintiffs have not filed suit under the IDEA. Instead, they have filed suit under the ADA and the Rehabilitation Act—both of which apply to schools and students and authorize lawsuits in federal court. These two provisions do not require exhaustion of administrative remedies. But in *Polera*, the Second Circuit held that the addition of a money damage claim under the ADA or the Rehabilitation Act did not excuse compliance with the exhaustion requirement when the matter at issue was the provision of appropriate educational services. 288 F.3d at 488; *see also id.* at 481 (the IDEA "provides that potential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)").

In examining Plaintiffs' claims closely, it is clear that many of the claims arise from a belief that the school district refused to provide an appropriate education. The claims identified at oral argument by Plaintiffs' counsel were a failure to protect T.S. from harassment; a failure to provide additional services such as tutoring during his sixth grade year; and a failure to pay for his alternative school placement during his current seventh grade year. The last two claims—whether expressed as equitable claims for reimbursement or money claims for damages—are claims that the school district did not provide an appropriate education.

Only the first claim identified by Plaintiffs—the failure to protect T.S. from harassment culminating in the poisoned milk incident—is a tort-like claim arising under the ADA (and a pure state-law negligence theory) which does not lend itself to resolution through an

---

[2] Section 1415(*l*) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

(Brackets in original, emphasis added.)

administrative due process hearing. There was obviously no opportunity to have a hearing before the incident, and after the incident a hearing officer would have had no authority to enter an award for consequential damages. But because Plaintiffs have brought a mixture of claims in which claims of inadequate educational services feature prominently, the court cannot proceed with the lawsuit. *See M.M. ex rel. J.M. v. New York City Dep't of Educ.*, No. 09 Civ. 5236(PAC), 2010 WL 2985477, at *7 (S.D.N.Y. July 27, 2010) (noting, in case where plaintiffs sought equitable relief as well as damages, that "[e]ven if the plaintiff seeks a remedy (such as money damages) that is unavailable under the IDEA, the plaintiff must still exhaust administrative remedies under the IDEA if 'the claim is one that seeks relief for an alleged failure to provide appropriate educational services.'" (quoting *Vultaggio ex rel. Vultaggio v. Bd. of Educ., Smithtown Cent. Sch. Dist.*, 216 F. Supp. 2d 96, 103 (E.D.N.Y. 2002))).

### III.    Futility or Irreparable Harm

It is necessary to address Plaintiffs' arguments regarding possible exceptions to the exhaustion requirement. Plaintiffs seek to avoid the exhaustion requirement by arguing that recourse to the due process hearing would be futile because the hearing officer lacks authority to issue all of the damages they seek and because the process is "circular" and inefficient.

The Second Circuit has recognized that the IDEA's exhaustion requirement "does not apply 'in situations in which exhaustion would be futile because administrative procedures do not provide adequate remedies.'" *Polera*, 288 F.3d at 488 (quoting *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992)). However, it is no excuse to the exhaustion requirement that one cannot receive everything one seeks to recover in the administrative process. *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 247 (2d Cir. 2008) ("[A] disabled student who claims deficiencies in her educational program may not bypass the IDEA's administrative exhaustion rule merely by claiming monetary damages." (citing *Polera*, 288 F.3d at 488)). So long as a substantial portion of the relief sought falls within the authority of the hearing officer, exhaustion is required.

Nor is the court persuaded by Plaintiffs' more general argument that the administrative process is wasteful or harmful to T.S. Cases involving educational requirements of students with disabilities present difficult issues of fact and professional judgment which benefit from consideration by an administrative hearing officer. The court sees no basis for concluding that sending this case to a hearing officer would be futile.

## IV. State-Law Claims

As stated above, Defendants assert that, in the absence of viable federal claims, Plaintiffs' state-law claims for negligence and violation of the VFHPAA should be dismissed without prejudice. Plaintiffs say that their VFHPAA claims should not be dismissed because a state court would dismiss those claims as preempted by federal law regarding students with disabilities. (Doc. 16 at 2.)

The court concludes that, since it lacks jurisdiction to adjudicate Plaintiffs' federal claims, it is appropriate to decline to retain supplemental jurisdiction over Plaintiffs' state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Dismissing Plaintiffs' state-law claims without prejudice allows Plaintiffs to reassert them after exhausting their administrative remedies. Any preemption issue can be addressed at the appropriate time if Plaintiffs elect to reassert their state-law claims.

## Conclusion

Defendants' Motion to Dismiss (Doc. 15) is GRANTED. The court dismisses this action without prejudice. In the event that Plaintiffs seek to refile after exhausting their administrative remedies, the court will not require payment of a second filing fee.

Dated at Rutland, in the District of Vermont, this 17 day of December, 2015.

Geoffrey W. Crawford, Judge
United States District Court